UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

|  |  |
|---|---|
| DEFENSE OF FREEDOM INSTITUTE FOR POLICY STUDIES, INC.,<br><br>　　　　Plaintiff,<br><br>v.<br><br>U.S. DEPARTMENT OF EDUCATION; and WHITE HOUSE OFFICE OF MANAGEMENT AND BUDGET,<br><br>　　　　Defendants. | Case No. 6:23-cv-1515-PGB-EJK |

**DEFENDANTS' MOTION TO DISMISS OR, ALTERNATIVELY,
TO TRANSFER AND MEMORANDUM OF LAW IN SUPPORT**

## TABLE OF CONTENTS

Preliminary Statement ........................................................................................ 1

Background .......................................................................................................... 2

   A. DFI ............................................................................................................. 2

   B. DOE and OMB ......................................................................................... 5

   C. The FOIA Requests ................................................................................. 6

Legal Standard .................................................................................................... 8

Argument ............................................................................................................ 9

  I. This Case Must Be Dismissed Because Venue Is Improper in the Middle District of Florida. ....................................................................................... 9

   A. DFI does not "reside" in the Middle District of Florida for purposes of § 552(a)(4)(B). ....................................................................................... 9

   B. The other prongs in § 552(a)(4)(B) also do not apply. ......................... 12

   C. Dismissal or transfer to the District of Columbia is appropriate. ............ 13

  II. Alternatively, This Case Should Be Transferred Pursuant to 28 U.S.C. § 1404(a) to the U.S. District Court for the District of Columbia. ................ 13

   A. Step one: This case could have been brought in the District of Columbia. 14

   B. Step two: The convenience factors strongly favor transfer. ..................... 15

     1. Factors 1, 2, 3, and 4 .......................................................................... 15

     2. Factor 7 ............................................................................................... 17

     3. Factor 8 ............................................................................................... 18

     4. Factor 9 ............................................................................................... 19

     5. Remaining factors ............................................................................... 20

Conclusion .......................................................................................................... 20

Defendants U.S. Department of Education ("DOE") and the White House Office of Management and Budget ("OMB"), pursuant to 28 U.S.C. § 1406(a), move to dismiss for improper venue or, alternatively, to transfer this case to the U.S. District Court for the District of Columbia.

## PRELIMINARY STATEMENT

This case is brought under the Freedom of Information Act ("FOIA"), 5 U.S.C. § 552, and seeks judicial intervention with respect to three FOIA requests—the first is directed to DOE and assigned tracking number 22-01850-F ("DOE Request 22-01850-F"),[1] the second is directed to OMB and assigned number 2022-177 ("OMB Request 2022-177"),[2] and the third is also directed to DOE and assigned tracking number 23-01128-F ("DOE Request 23-01128-F").[3]

This case, brought by a Washington, D.C.-based nonprofit organization, has no meaningful connection to the Middle District of Florida and should be dismissed, or transferred, for improper venue. Plaintiff Defense of Freedom Institute for Policy Studies, Inc. ("DFI") claims it "resides" in this district for purposes of FOIA's venue provision, 5 U.S.C. § 552(a)(4)(B), because it staffed a single-employee satellite office in this district in the weeks leading up to this lawsuit. These allegations fall far short. This is especially so considering that "resides" in this context means the location of

---

[1] (ECF 1-3, pp.2-10; *see also* Decl. of Deborah Moore, **Exhibit 1** hereto, ¶5). Pinpoint citations for ECF 1-3, or any other docket entries or exhibits containing multiple documents, are to the electronic page numbers.

[2] (ECF 1-3, pp.51-59; *see also* Decl. of Heather Walsh, **Exhibit 3** hereto, ¶5).

[3] (ECF 1-3, pp.64-84; *see also* Ex. 1, ¶6).

DFI's "principal place of business," which is plainly not the Middle District of Florida. *See* 28 U.S.C. § 1391(c)(2) (defining "residency" "[f]or all venue purposes"); *see also* H.R. Rep. No. 112-10 at 20 (2011) (noting § 1391(c) was enacted to define "residency" for "all venue statutes, including venue provisions that appear elsewhere in the United States Code").

Alternatively, in the event venue is not improper in this district, the case should nonetheless be transferred to the District of Columbia pursuant to 28 U.S.C. § 1404. Washington, D.C. is an available and appropriate forum. *See* 5 U.S.C. 552(a)(4)(B); *In re Scott*, 709 F.2d 717, 720 (D.C. Cir. 1983) (characterizing D.C. as the "all-purpose forum in FOIA cases" with "substantial experience in working with [] FOIA"). And the convenience factors strongly favor transferring this case. *See Garcell v. Nat'l Acad. Educ. Partners, Inc.*, No. 6:21-cv-288-RBD-GJK, 2021 WL 2828924, at *1 (M.D. Fla. Apr. 28, 2021) (citing factors from *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005)).

## BACKGROUND

### A.    DFI

DFI lacks any relevant ties to the Middle District of Florida, as it is incorporated elsewhere, headquartered elsewhere, and all of its leadership and employees (but one) are located elsewhere.

Incorporation. As alleged in the complaint, DFI is incorporated in Virginia, and its principal registered agent is located at 250 Browns Hill Court, Midlothian, Virginia

23114. (ECF 1, ¶6). These allegations are confirmed by DFI's Articles of Incorporation, filed with the Virginia State Corporation Commission. (**Exhibit 5** hereto). And each of DFI's Annual Reports filed since its June 4, 2021 formation list the Midlothian, Virginia address as its "Principal Office Address" and the address for each of its directors and executives. (**Exhibit 6** hereto (composite of annual reports); *see also* Decl. of R. Sowell, **Exhibit 20** hereto, ¶¶2-3).

DFI correspondence and letterhead. Though incorporated in Virginia, DFI consistently holds itself out as headquartered in Washington, D.C. For example, DFI's letterhead identifies its address as 1455 Pennsylvania Avenue NW, Suite 400, Washington, D.C. 20004, as indicated in the correspondence attached to the complaint, including the FOIA requests themselves. (ECF 1-3, pp.2, 22, 43, 46, 51, 64). Further, the transmittal emails for the FOIA requests were sent by Paul Moore, senior counsel with DFI, who's signature block identifies the Washington, D.C. address. (**Exhibit 2** hereto (transmittal email for DOE Request 23-01128-F); **Exhibit 4** hereto (transmittal email for OMB Request 2022-177); *see also* Ex. 1, ¶7; Ex. 3, ¶6). And DFI's various other email correspondence contain the same signature block, with the same Washington, D.C. address. (*E.g.*, ECF 1-3, pp.41, 62).

Online presence. DFI's social media accounts identify its headquarters as Washington, D.C. For example, DFI maintains an active LinkedIn page, which identifies its location as Washington, D.C. (**Exhibit 7** hereto). DFI also maintains

active "X" (previously, Twitter) and Facebook pages, both of which identify its location as Washington, D.C. (**Exhibits 8**, **9** hereto; *see also* Ex. 20, ¶¶4-6).

    <u>Leadership and employees.</u> DFI's personnel are primarily located in Washington, D.C. or work remotely in various locations other than central Florida. DFI's website (https://dfipolicy.org) lists nine individuals associated with its "Leadership" and "Team." (**Exhibit 10** hereto). Of the two individuals in leadership, neither is located in central Florida—President Robert Eitel holds himself out as located in Washington, D.C., as does co-founder Jim Blew. (**Exhibit 11** hereto (composite of LinkedIn profiles for leadership members)). And but for a single exception, none of DFI's other team members is located in central Florida—Don Daugherty is located in Wisconsin; Cari Isham is located in Tennessee; Selena Lin is located in Georgia; Clairece Marker is located in Indiana; Paul Zimmerman is located in Washington, D.C.; and Emily Cruikshank is located in Washington, D.C. (**Exhibit 12** hereto (composite of LinkedIn profiles for team members); *see also* **Exhibit 13** hereto (DFI LinkedIn "People" page, showing ten employees, with only one in Florida)). When DFI advertises for employment vacancies, it identifies the location as either "virtual or in the Washington, D.C. area." (**Exhibit 14** hereto (advertising associate counsel position); *see also* Ex. 20, ¶¶7-11).

    Further, the sole central-Florida-based individual—Martha Astor—did not join DFI until July 2023, just weeks before the filing of this lawsuit. (**Exhibit 15** hereto

(Astor LinkedIn profile); **Exhibit 16** hereto (Eitel LinkedIn post); *see also* Ex. 20, ¶¶12-13).

<u>Florida registration.</u> DFI did not register to do business in Florida until July 20, 2023, again just weeks before the filing of this lawsuit. (**Exhibit 17** hereto (Fla. Dep't of State webpage capture)). And DFI's corporate filings show its Virginia incorporation and now list its "principal office address" as 1765 Duke Street, Alexandria, VA 22314, which is also the address listed for each of its directors and officers. (**Exhibit 18** hereto (corporate filings); *see also* Ex. 20, ¶¶14-15).

### B.   DOE and OMB

Likewise, neither of the federal agencies subject to DFI's FOIA requests has any relevant ties to central Florida.

DOE is headquartered in Washington, D.C., and its FOIA Service Center— which is generally responsible for handling FOIA requests, including those at issue in this case—is located within its Washington, D.C. headquarters. (Ex. 1, ¶¶3-4; *see also* ECF 1, ¶7; ECF 1-3, pp.2, 64 (directing FOIA requests to FOIA Service Center at Washington, D.C. headquarters)). All DOE personnel that have been or will be involved in the searching, gathering, reviewing, or producing of documents responsive to DOE Request 22-01850-F and DOE Request 23-01128-F are located in Washington, D.C. (Ex. 1, ¶8). In the event of an evidentiary hearing or trial in this case, any witnesses who may be needed to testify on DOE's behalf with respect to any such issues would be located in Washington, D.C. (*Id.*). Further, any hard-copy

documents that may be responsive to these requests are located in Washington, D.C. (*Id.* ¶9).

Similar to DOE, OMB is headquartered in Washington, D.C., and its Office of General Counsel—which is responsible for handling FOIA requests—is located within its Washington, D.C. headquarters. (Ex. 3, ¶¶3-4; *see also* ECF 1, ¶8; ECF 1-3, p. 51 (directing FOIA request to OMB "FOIA Officer" in Washington, D.C.)). All OMB personnel that have been or will be involved in the searching, gathering, reviewing, or producing of documents responsive to OMB Request 2022-177 are located in Washington, D.C., except for a small number of personnel who work remotely. (Ex. 3, ¶7). Any witnesses who may be needed to testify on OMB's behalf with respect to any such issues would be located in Washington, D.C., but for the same exception. (*Id.*). Any hard-copy documents that may be responsive to these requests are located in Washington, D.C., and none are located in the Middle District of Florida. (*Id.* ¶8).

## C.   The FOIA Requests

<u>DOE Request 22-01850-F.</u> This request is dated February 7, 2022, and directed to DOE. (ECF 1-3, pp.2-10; *see also* Ex. 1, ¶5)). The request was specifically directed to DOE's FOIA Service Center at its Washington, D.C address. (*Id.*). As noted, the request is on DFI letterhead (listing its Washington, D.C. address). (*Id.*). The substance of the request purports to seek documents related to mandatory disclosures by institutions of higher education under Section 117 of the Higher Education Act regarding foreign-source gifts and contracts. (ECF 1-3, pp.2-10). The face of the

request has no relation to central Florida, let alone any institution of higher education or entity located in central Florida.

    <u>OMB Request 2022-177.</u> This request is dated February 7, 2022, and directed to OMB. (ECF 1-3, pp.51-59; *see also* Ex. 3, ¶5). The request was specifically directed to OMB's "FOIA Officer," at its Washington, D.C. address. (*Id.*). As noted, the request is on DFI letterhead and transmitted by email (both the letter and email listing DFI's Washington, D.C. address). (Ex. 4). The substance of this request largely mirrors that of DOE Request 22-01850-F and has no relation to central Florida.

    <u>DOE Request 23-01128-F.</u> This request is dated February 27, 2023, and directed to DOE. (ECF 1-3, pp.64-84; *see also* Ex. 1, ¶6). The request was specifically directed to DOE's FOIA Service Center at its Washington, D.C address. (*Id.*). And, as noted, the request is on DFI letterhead and transmitted by email (both the letter and email listing DFI's Washington, D.C. address). (Ex. 2). The substance of this request again relates to Section 117 of the Higher Education Act, though now purports to seek categories of documents related to DOE's "decision to move Sec. 117 data collection responsibilities from OGC to FSA." (ECF 1-3, pp.77-78). As above, the face of the request has no direct relation to central Florida. Indeed, the third element of the request specifically seeks communications related to individual institutions—only one is located in Florida, and it is not in the Middle District of Florida. (*Id.* p.78).

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(3),[4] a party may move to dismiss a case based on "improper venue." When a defendant invokes this provision, the plaintiff bears the burden of showing that the venue selected is proper. *Delong Equip. Co. v. Wash. Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir. 1988); *Pinson v. Rumsfeld*, 192 F. App'x 811, 817 (11th Cir. 2006) ("The plaintiff has the burden of showing that venue in the forum is proper."). Factual allegations are only accepted as true if uncontroverted by the defendant's evidence. *Home Ins. Co. v. Thomas Indus., Inc.*, 896 F.2d 1352, 1355 (11th Cir. 1990); *Delong*, 840 F.2d at 845. And courts may consider evidence outside of the pleadings and may make findings of fact to resolve the motion. *Bailey v. ERG Enters., LP*, 705 F.3d 1311, 1314 n.1 (11th Cir. 2013) (internal citations omitted).

---

[4] The government is mindful that this motion is filed post-answer and that Rule 12(b) instructs that motions to dismiss "asserting any [Rule 12(b)] defenses must be made before pleading." The government nonetheless preserved its improper-venue defense in its Answer. *Accord* Fed. R. Civ. P. 12(h) (defense of improper venue is preserved by including "it in a responsive pleading"); (ECF 25, ¶4 (denying venue allegation), p.15 (raising improper venue as second affirmative defense)). Courts employ different procedural vehicles for considering post-answer challenges to improper venue. *See Am. Motorists Ins. Co. v. Roller Bearing Co.*, 2001 WL 170658, at *2 (S.D.N.Y. Feb. 21, 2001) ("When a defendant asserts the defense of improper venue in its answer, it may later make a motion under Rule 12(b)(3) or § 1406(a)."); *Snyders Heart Valve LLC v. St. Jude Med. S.C., Inc.*, 2018 WL 3099709, at *1-2 (E.D. Tex. June 25, 2018) (addressing post-answer venue challenge brought as "Motion for Summary Judgment" (i.e., under Rule 56)). The United States cites to the 12(b)(3) standard and has no objection to applying this more plaintiff-friendly standard.

## ARGUMENT

I. **This Case Must Be Dismissed Because Venue Is Improper in the Middle District of Florida.**

Venue for civil actions in federal district courts is typically governed by 28 U.S.C. § 1391. Yet where, as here, the relevant statute includes its own venue provision, that provision will govern in the first instance. *See id.* § 1391(a) (governing "except as otherwise provided by law"); *cf. id.* § 1391(c) (discussed *infra*; defining "residency" "for all venue purposes," including venue provisions in other statutes).

For FOIA cases, 5 U.S.C. § 552(a)(4)(B) provides for venue in one of four places—the district in which (1) the plaintiff "resides"; (2) the plaintiff has "his principal place of business"; (3) "the agency records are situated"; or in (4) the U.S. District Court for the District of Columbia. A version of this venue provision has been part of section 552 since FOIA's enactment. *See* Pub. L. No. 90-23, 81 Stat. 54, 54 (1967) (contained within § 552(a)(3)); *accord* Pub. L. No. 89-487, 80 Stat. 250 (1966) (initial enactment of FOIA); Pub. L. No. 89-554, 80 Stat. 368, 383 (1966) (subsequent enactment of Title 5). And this portion of § 552(a)(4)(B) has existed its current form since 1974. *See* Pub. L. No. 93-502, 88 Stat. 1561 (1974).

A. **DFI does not "reside" in the Middle District of Florida for purposes of § 552(a)(4)(B).**

DFI relies on only one of these prongs—DFI alleges that it "resides" in the Middle District of Florida because it maintains a satellite office here. (ECF 1, ¶4).

So where do we look to define "resides" under FOIA's venue provision? The answer is the general venue statute—subsection 1391(c) defines "residency" "for all

venue purposes." Congress amended this subsection in 2011, via the Federal Courts Jurisdiction and Venue Clarification Act ("FCJVCA"), Pub. L. No. 112-63, § 202, 125 Stat. 758 (2011). Among other things, the FCJVCA amended § 1391(c) to make it applicable "for all venue purposes," whereas it previously only applied "[f]or purposes of venue under this chapter." *Cf.* 28 U.S.C. § 1391(c) (2010) (emphasis added). Both the statute's plain language and legislative history confirm that, following the FCJVCA's amendment, § 1391(c)'s definition of "residency" is designed to "apply to all venue statutes, including venue provisions that appear elsewhere in the United States Code." H.R. Rep. No. 112-10, at 20 (2011) (emphasis added) (subsection titled, "Venue Rules Applicable Universally");[5] *accord Savage Servs. Corp. v. United States*, 25 F.4th 925, 933 (11th Cir. 2022) ("courts generally adhere to the principle that statutes relating to the same subject matter should be construed harmoniously").

How does § 1391(c) define "resides"? As relevant to this case, § 1391(c)(2) specifically addresses residency for corporate (as well as unincorporated) entities:

> [A]n entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question and, if a plaintiff, only in the judicial district in which it maintains its principal place of business.

(emphasis added). Section 1391(c)(2)'s structure defines residency differently depending on whether the corporate entity is in the position of defendant or plaintiff.

---

[5] *Available at* 2011 WL 484052, 2011 U.S.C.C.A.N. 576.

Namely, where the corporate entity is a defendant, venue is proper in "any district in which such defendant is subject to the court's personal jurisdiction." *Id.*

Alternatively, where—as here—the corporate entity is a plaintiff, venue is proper "only in the judicial district in which it maintains its principal place of business." *Id.* (emphasis added). A corporate-plaintiff is thus limited to a single venue (when relying on its "residency"), which is the district in which it maintains its principal place of business. Indeed, Congress enacted this limitation with the express intent toward "narrowing venue options for plaintiffs suing in their common name," which was "in keeping with the trend to move away from plaintiff-based venue and focus on the convenience of defendants." H.R. Rep. No. 112-10, at 22; *see also* 14D Wright & Miller, *Fed. Prac. & Proc.* § 3811.1 (4th ed.).

Here, DFI does not reside in the Middle District of Florida, as it does not maintain its principal place of business here.[6] *See* 28 U.S.C. § 1391(c)(2). Whereas the

---

[6] During the parties' meet-and-confer, lead counsel for DFI suggested that to rely on the plain language of § 1391(c)(2)—by defining "resides" as "principal place of business"—would render the second prong of § 552(a)(4)(B) superfluous. But this argument is easily rejected. Section 1391(c)(2) only supplies the definition of residency for parties that are legal entities, and so prong one ("resides") and prong two ("principal place of business") under § 552(a)(4)(B) would continue to mean different things for plaintiffs that are individuals. *See eSimplicity, Inc. v. United States*, 162 Fed. Cl. 372, 384-85 (Fed. Cl. 2022) (rule against surplusage only applies where interpretation would actually render provision "inoperative or superfluous" or "void"); *see also Savage*, 925 F.4th at 933 ("the conclusion that two statutes conflict is one that courts must not reach lightly"). Further, DFI's proposed reading would create an ambiguity with respect to "resides" where none would otherwise exist. *See Barton v. U.S. Att'y Gen.*, 904 F.3d 1294, 1301 (11th Cir. 2018) ("applying the rule against surplusage is, absent other indications, inappropriate' when it would make an otherwise unambiguous statute ambiguous" (quoting *Lamie v. U.S. Tr.*, 540 U.S. 526, 536 (2004))). Finally, lest there be any doubt, the specificity now provided in § 1391(c)(2) was enacted over 44 years after the relevant language in § 552(a)(4)(B). *See Savage*, 925 F.4th at 933 (noting that, in the event of conflict, "more recent and specific statutes should prevail over older").

complaint alleges that DFI resides in this district by virtue of maintaining a satellite office here, (ECF 1, ¶4), this conclusory allegation is not accompanied by any assertion that DFI maintains its principal place of business in this district. Nor are there any factual allegations to support such an assertion—maintaining a satellite office in Titusville (for a single employee, hired weeks before litigation was filed, *see* Exs. 15, 16) falls far short.[7] Absent sufficient allegations in the complaint, plaintiff fails to establish venue in the first instance.[8]

### B.    The other prongs in § 552(a)(4)(B) also do not apply.

Though DFI only attempts to plead the first prong under § 552(a)(4)(B) ("resides"), none of the other three apply. The second prong ("principal place of business") does not apply for the reasons stated above. *Supra* Part I.A. The third prong (district "in which the agency records are situated") does not apply, as there are no allegations that any responsive documents are located in the Middle District of Florida. Indeed, to the extent any hard-copy documents are responsive to the FOIA requests, they are located in Washington, D.C. (Ex. 1, ¶9; Ex. 3, ¶8). The fourth prong necessarily does not apply, as this district is not the U.S. District Court for the District of Columbia.

---

[7] Elsewhere, the complaint alleges that the FOIA requests "originated from Florida" (despite their letterhead and email signature block), "as DFI's then-Senior Counsel … resided in Florida." (ECF 1, ¶53). But that Mr. Moore resided in the Southern District of Florida, (**Exhibit 19** hereto; *see also* Ex. 20, ¶16), is not relevant to whether venue is proper in *this* district—the Middle District of Florida.

[8] And to be sure, any effort to plead that this district comprises DFI's principal place of business would be unequivocally rebutted by DFI's own letterhead, emails, website, social media, corporate filings, etc. *Supra* Part A.

### C.     Dismissal or transfer to the District of Columbia is appropriate.

Under 28 U.S.C. § 1406(a), the court "shall dismiss" any case brought in the wrong venue or "if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." "[T]he decision whether to transfer a case is left to the sound discretion of the district court." *Simbaqueb v. DOJ*, No. 09-cv-066, 2010 WL 29900042, at *3 (S.D. Ga. May 28, 2010) (quoting *Roofing & Sheet Metal Servs., Inc. v. La Quinta Motor Inns, Inc.*, 689 F.2d 982, 985 (11th Cir. 1982)) (transferring FOIA lawsuit for improper venue).

Here, because venue is improper in this district, dismissal is the statutory default. *See* 28 U.S.C. § 1406(a). And the Court would be well within its discretion to refuse transfer in lieu of dismissal, considering DFI has yet to reckon with the plain language of the relevant statutes, thus necessitating the current motion practice. Alternatively, the Court could exercise its discretion to transfer this case to the U.S. District Court for the District of Columbia, which is a proper venue for this FOIA action under the fourth prong of § 552(a)(4)(B).

## II.    Alternatively, this Case Should Be Transferred Pursuant to 28 U.S.C. § 1404(a) to the U.S. District Court for the District of Columbia.

In the event the Court does not find venue improper in this district, the case should nonetheless be transferred to the District of Columbia, as it has no legitimate nexus to the Middle District of Florida.

"Under 28 U.S.C. § 1404(a), 'a district court may transfer any civil action to any other district or division where it might have been brought' for 'the convenience of

parties and witnesses.'" *Garcell v. Nat'l Acad. Educ. Partners, Inc.*, No. 6:21-cv-288-RBD-GJK, 2021 WL 2828924, at *1 (M.D. Fla. Apr. 28, 2021) (quoting 28 U.S.C. § 1404(a)). "Courts have broad discretion under section 1404(a)." *Hight v. DHS*, 391 F. Supp. 3d 1178, 1182-83 (S.D. Fla. 2019) (citing *England v. ITT Thompson Indus., Inc.,* 856 F.2d 1518, 1520 (11th Cir. 1988)). Whereas a plaintiff's chosen forum is typically afforded special weight, that weight diminishes where "the plaintiff's choice is not her home forum." *Garcell*, 2021 WL 2828924, at *2.

Motions to transfer under § 1404(a) require a two-step inquiry. *See id.* "First, courts look to whether the case could have been brought in the alternative venue." *Hight*, 391 F. Supp. 3d at 1183. Second, if the first step is met, "courts evaluate whether convenience and the interest of justice require transfer." *Id.* (quotation omitted). Under this step, "courts weigh various factors implicating both public and private interests," including:

> (1) [T]he convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.

*Id.* (quoting *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005)).

### A.   <u>Step one:</u> This case could have been brought in the District of Columbia.

"A case might have been brought in a transferee district if that district has subject matter jurisdiction over the action, venue is proper, and the parties are amenable to service of process in the transferee forum." *Garcell*, 2021 WL 2828924, at *1 (quoting *Hight*, 391 F. Supp. 3d at 1183-84).

Here, venue is proper in the transferee forum, as the District of Columbia is one of the four options set forth under § 552(a)(4)(B). *In re Scott*, 709 F.2d 717, 720 (D.C. Cir. 1983) ("Section 552(a)(4)(B) reflects an express congressional design to render the District of Columbia an all-purpose forum in FOIA cases."). And to be sure, the District of Columbia necessarily has subject-matter jurisdiction over this action and personal jurisdiction over the defendant federal agency headquartered there. *See* 5 U.S.C. § 551(a)(4)(B); 28 U.S.C. § 1331; *Hight*, 391 F. Supp. 3d at 1184.

**B.      Step two: The convenience factors strongly favor transfer.**

1.      Factors 1, 2, 3, and 4

Factors 1 (convenience of witnesses), 2 (location of documents), 3 (convenience of the parties), and 4 (locus of operative facts) weigh heavily in favor of transfer.

From DOE and OMB's perspective, both of their headquarters are in Washington, D.C. (Ex. 1, ¶3; Ex. 3, ¶3). The relevant offices responsible for handling the requests—DOE's FOIA Service Center and OMB's OGC—are located in Washington, D.C. (Ex. 1, ¶4; Ex. 3, ¶4). Except for a small number of OMB personnel working remotely, all agency personnel that would be responsible for, or involved in, responding to the two requests are located in the Washington, D.C. metro area, as would be all individuals involved in searching, gathering, reviewing, and producing of

documents responsive to the requests. (Ex. 1, ¶8; Ex. 3, ¶7). Further, whereas much of DFI's requests seek ESI, any hard-copy documents responsive to the requests are located in Washington, D.C. (Ex. 1, ¶9; Ex. 3, ¶8). Both agencies are better accustomed to litigating FOIA cases in the District of Columbia federal courts, as that is where the vast majority of their FOIA litigation is filed. (Ex. 1, ¶10; Ex. 3, ¶9). Specifically as to DOE, of the forty-four FOIA lawsuits filed against DOE since January 1, 2020, all but nine were filed in the District of Columbia. (Ex. 1, ¶10). Specifically as to OMB, of the twenty-six FOIA lawsuits filed against OMB since January 1, 2020, all but seven were filed in the District of Columbia. (Ex. 3, ¶9).

From DFI's perspective, the District of Columbia would necessarily be a convenient forum. DFI consistently holds itself out as being headquartered in Washington, D.C.—on its letterhead, (ECF 1-3, pp.2, 22, 43, 46, 51, 64); on its transmittal emails for the FOIA requests, (Exs. 2, 4); on its employees' email signature blocks, (ECF 1-3, pp.41, 62); on its LinkedIn profile, (Ex. 7); on its "X" profile, (Ex. 8), and on its Facebook profile, (Ex. 9). Most recently, DFI represented in corporate filings with the State of Florida that it was located in Alexandria, Virginia, directly adjacent to the District of Columbia. (Exs. 17, 18). As to DFI's employees, more are located in Washington, D.C. than anywhere else. For example, its leadership is located in Washington, D.C., (Exs. 10, 11), and of the six non-leadership employees on its website, two are located in the Washington, D.C. area, which is the only location where more than one employee is located, (Exs. 10, 12, 13). Indeed, when DFI posts

employment vacancies, it advertises the location as either "virtual or in the Washington, D.C. area." (Ex. 14).

In contrast, DFI does not appear to have any meaningful connection to the Middle District of Florida. It only has one employee here, Martha Astor, (Ex. 15), and Ms. Astor did not join DFI until weeks prior to this lawsuit, (*id.*; Ex. 16). Indeed, DFI did not register to do business in Florida until immediately prior to this litigation. (Exs. 17, 18). And the only other DFI employee that appears to be located in Florida is not in the Middle District of Florida. (ECF 1, ¶53; *see also* Ex. 19).

2.    Factor 7

Factor 7 (forum's familiarity with the governing law) also weighs heavily in favor of transfer. Whereas this Court is more than capable of presiding over FOIA litigation, "the District Court for the District of Columbia has special expertise in FOIA matters." *Gaylor v. DOJ*, No. 05-cv-414, 2006 WL 1644681, at *1 (D.N.H. June 14, 2006) (citing *In re Scott*, 709 F.2d at 720 (discussing legislative history recognizing that District of Columbia courts have special expertise in FOIA matters)); *Matlack, Inc. v. EPA*, 868 F. Supp. 627, 630 (D. Del. 1994) ("The United States Court of Appeals for the District of Columbia Circuit has long been on the leading edge of interpreting the parameters of what a federal agency must disclose and may withhold consistent with the terms of FOIA."). Indeed, Congress expressly added the District of Columbia "to the list of fora in which a FOIA complaint might be brought" because of its "substantial experience in working with the FOIA." *In re Scott*, 709 F.2d at 720 (quotation omitted); *see also* S. Rep. No. 93-854 (1974) (noting U.S. District Court for

D.C. added as a venue option, because "[o]ver one-third of reported FOIA cases have thus far been brought in the District of Columbia, and the courts of that district have gained substantial expertise in this area"). That this case would benefit from the unique subject-matter expertise of the transferee court is especially so given the complexity of the FOIA requests at issue.

### 3.   Factor 8

Factor 8 (weight accorded plaintiff's choice of forum) does not favor DFI. As this Court has recognized, the presumption afforded a plaintiff's choice of forum "'applies with less force' when the plaintiff's choice is not her home forum because 'the assumption that the chosen forum is appropriate is in such cases less reasonable.'" *Garcell*, 2021 WL 2828924, at *2 (quoting *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430 (2007)); *see also Awad v. Mayorkas*, No. 5:21-cv-601-JSM-PRL, 2022 WL 1215521, at *2 (M.D. Fla. Apr. 7, 2022) ("[T]he plaintiff's choice is accorded less weight where the choice of forum lacks any significant connection to the underlying claim."); *Jimenez v. R&D Masonry, Inc.*, No. 15-cv-1255, 2015 WL 7428533, at *3 (D.D.C. Nov. 20, 2015) ("[W]hen the forum preferred by the plaintiff is not his home forum, and the defendant prefers the plaintiff's home forum, then there is little reason to defer to the plaintiff's preference." (quotation omitted) (emphasis in original)). Indeed, there is a "strong inclination" to favor transfer "when all of the parties are residents of the proposed transferee district." *Jimenez*, 2015 WL 7428533, at *3 (quoting 15 Wright & Miller, *Fed. Prac. & Proc.* § 3849 (3d ed. 2007)).

Here, any presumption in favor of DFI's choice of forum is either nonexistent or de minimis, given that DFI is not at home in the Middle District of Florida. *See supra* Part A & Part II.B.1; *Gottlieb v. SEC*, No. 6:23-cv-1074-PGB-RMN, 2023 WL 5933934, at *3 (M.D. Fla. Aug. 2, 2023) (finding this factor "[a]t best … neutral"). Indeed, because the transferee district is the home forum for DOE, OMB, and (by all accounts) DFI, there is a strong inclination toward transfer.

### 4.   Factor 9

Factor 9 (judicial efficiency and the interests of justice) strongly favors transfer. For the reasons discussed, neither DFI nor the three FOIA requests at issue in this case have any meaningful connection to the Middle District of Florida. *See supra* Part A & Part II.B.1. Further, the caseload before this Court is substantial, especially when compared to that of the transferee court. For the 12-month period ending June 30, 2023, the Middle District of Florida (at 8,972) had well over twice at many new civil filings as the District of Columbia (at 3,929).[9] Despite this, the two districts are allotted the same number of judgeships, resulting in the Middle District of Florida having over twice as many weighted filings per judgeship (at 632) as the District of Columbia (at

---

[9] *See* Table C, *U.S. District Courts – Civil Cases Filed, Terminated, and Pending*, Administrative Office of the U.S. Courts, *available at* https://www.uscourts.gov/statistics/table/c/statistical-tables-federal-judiciary/2023/06/30 (last visited Oct. 10, 2023).

276).[10] And at present, unlike the transferee court, there exists a judicial emergency in the Middle District of Florida.[11]

### 5. Remaining factors

The remaining factors—factors 5 (availability of process to compel attendance) and 6 (relative means of the parties)—either have no applicability to this case or are otherwise a wash. On the former, "[t]his factor is relevant only if a party demonstrates, as a threshold matter, that a particular witness would be unwilling to testify at trial." *Am. Navigation Sys., Inc. v. Samsung Elec. Co.*, No. 8:14-cv-1131-CEH-MAP, 2014 WL 12701068, at *5 (M.D. Fla. Dec. 1, 2014). The government is unaware of any third-party witnesses who would need (and be unwilling) to testify in this case or that would otherwise be outside of the Court's subpoena power, and this factor is thus "neutral." *Id.* On the latter, there is no indication that DFI is under-resourced and, in any event, DFI would be at home in the transferee district. So this factor is similarly a wash. *See Jimenez*, 2015 WL 7428533, at *4 (finding irrelevant (or equally balanced) factor to be "a wash").

## CONCLUSION

Wherefore, defendants respectfully request that this Court grant this motion and (a) dismiss this case for improper venue or, alternatively, transfer this case to the U.S.

---

[10] *See U.S. District Courts – Combined Civil and Criminal Federal Court Management Statistics (June 30, 2023)*, Administrative Office of the U.S. Courts, *available at* https://www.uscourts.gov/statistics/table/na/federal-court-management-statistics/2023/06/30-1 (last visited Oct. 10, 2023).

[11] *See Judicial Emergencies*, Administrative Office of the U.S. Courts, *available at* https://www.uscourts.gov/judges-judgeships/judicial-vacancies/judicial-emergencies (last visited Oct. 10, 2023).

District Court for the District of Columbia pursuant to either 28 U.S.C. § 1406 or 28 U.S.C. § 1404; and (b) grant defendants such further relief as is just and proper.

### Local Rule 3.01(g) Certification

Pursuant to Local Rule 3.01(g), the undersigned certifies that he conferred with counsel for plaintiff, who advised that plaintiff opposes the relief requested in this motion.

Dated: October 23, 2023

Respectfully submitted,

ROGER B. HANDBERG
United States Attorney

By:   /s/ Robert D. Sowell
Robert D. Sowell
Assistant United States Attorney
FBN 113615
Office of the United States Attorney
400 W. Washington St., Ste. 3100
Orlando, FL 32801
Telephone: 407-648-7500
Robert.sowell@usdoj.gov

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 23, 2023, I electronically filed the foregoing document with the Clerk of Court using the CM/ECF system, which will send notice of the filing to the following CM/ECF participant:

Martha A. Astor, Esq.
Donald A. Daugherty, Jr., Esq.

/s/ Robert D. Sowell
Assistant United States Attorney